S06A1776, S06X1777. SCHOFIELD v. HOLSEY; and vice versa.
(642 SE2d 56)

HINES, Justice.

Robert Wayne Holsey was convicted of murder and armed robbery, and he was sentenced to death for the murder. This Court affirmed his convictions and sentences in 1999. *Holsey v. State*, 271 Ga. 856 (524 SE2d 473) (1999). Holsey filed a petition for writ of habeas corpus on October 6, 2000. Evidentiary hearings were held June 16-18, 2003, and December 8-9, 2003. The habeas court vacated Holsey's death sentence in an order filed of record on May 15, 2006.

The Warden has appealed in Case No. S06A1776. Holsey has cross-appealed in Case No. S06X1777. In the Warden's appeal, this Court reverses and reinstates Holsey's death sentence. In Holsey's cross-appeal, this Court affirms.

## I. Factual Background

The evidence at trial showed that Robert Wayne Holsey robbed a Jet Food Store in Milledgeville with a handgun shortly before 1:30 a.m. on December 17, 1995. Holsey received money from both the cash register and the lottery machine after telling the store clerk, "Bitch, I want you to give me all your money." Holsey's voice was recorded on the store's surveillance videotape and was identified at trial by Holsey's girlfriend. Holsey fled the convenience store in a red Ford Probe automobile he had borrowed from his sister's girlfriend earlier that night. The red Probe was stopped at the Royal Inn Motel approximately four minutes later by Deputy William Edward Robinson, IV. Deputy Robinson made a radio call identifying the red Probe's license plate number and then approached the automobile holding a flashlight. Deputy Robinson received two bullet wounds, one to his right arm and one to the back of the right side of his head. Deputy Robinson managed to fire several shots before sustaining the fatal head wound.

After the shooting, another deputy spotted the Probe and turned his patrol vehicle around to give chase, but the Probe sped away and escaped. Witnesses observed the Probe traveling at a high rate of speed through a red light and into lanes of oncoming traffic. One witness who knew Holsey testified that she saw him alone in the Probe as it passed by at the red light.

Having thus far evaded capture, Holsey called his girlfriend, Mary Jackson, and asked her to pick him up at his sister's house. He specifically directed Jackson to come in her blue Jeep Cherokee vehicle rather than in her burgundy-colored automobile. When Jackson arrived at Holsey's sister's house, Holsey called to Jackson from behind a fence on a hill. Holsey had changed clothes since he left Jackson's house several hours earlier. Jackson refused Holsey's request to take him to his mother's house so he could monitor a police scanner, but Jackson did agree to his request to drive him past the motel where the murder had occurred and then back to his sister's house by way of back roads. When back at his sister's house, Holsey directed Jackson to park her Jeep Cherokee behind the Probe to conceal its license plate. As Holsey and Jackson sat in the parked Jeep Cherokee, a police officer spotted the Probe and verified that its license plate number matched the license plate number in the victim's radio call. Holsey exited the Jeep Cherokee, refused the officer's

command to put his hands up, looked around as though searching for an escape route, and then ultimately surrendered.

Law enforcement officers discovered, hidden near Holsey's sister's house, clothing that matched the clothing worn by the armed robbery perpetrator and a hat belonging to Jackson's son. The murder weapon was concealed nearby and was later found by a civilian. Holsey's tennis shoes were taken from him after his arrest, and expert testimony showed that one of the shoes had blood on it with DNA consistent with the victim's blood. Holsey gave strong physical resistance and screamed loudly when officers initially attempted to conduct a gunshot residue test on his hand. A trace metal detection test of Holsey's hand was administered later and rendered a result consistent with Holsey's having held the murder weapon, which was metal with wooden grips. A bullet recovered from the Probe was matched with Deputy Robinson's service weapon. The bullet retrieved from Deputy Robinson's head during his autopsy was matched with a handgun belonging to Holsey's girlfriend, Mary Jackson. Jackson testified that Holsey admitted to her after the murder that he had taken the handgun.

Evidence admitted during the sentencing phase showed that Holsey had robbed another convenience store in 1983 after striking the clerk in the face with a brick and that he had stabbed one man four times and repeatedly shot at another man and a woman with a rifle in 1992 during a dispute at a nightclub.

## II. Alleged Ineffective Assistance of Counsel

Holsey made several claims in the habeas court regarding the alleged ineffective assistance of his trial counsel. To prevail on his claims, Holsey must show that his trial counsel rendered constitutionally-deficient performance and that actual prejudice resulted. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783-784 (1) (325 SE2d 362) (1985) (bringing into Georgia law the standards of *Strickland v. Washington*). In order to find actual prejudice, this Court must conclude that "there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors,[1] the result of the proceeding would

---

[1] The Supreme Court of the United States has held that it is the prejudice arising from "counsel's errors" that is constitutionally relevant, not that each individual error by counsel should be considered in a vacuum. *Strickland*, 466 U. S. at 687 (III). Accordingly, the cases in which the Court of Appeals has held that the cumulative effect of counsel's errors should not be considered are disapproved. See *Anderson v. State*, 282 Ga. App. 58, 62 (3) (637 SE2d 790) (2006); *Fields v. State*, 281 Ga. App. 733, 737 (2) (637 SE2d 136) (2006); *Hutchens v. State*, 281

have been different. [Cit.]" *Smith*, 253 Ga. at 783 (1). In considering an ineffective assistance claim, this Court accepts the habeas court's findings of fact unless they are clearly erroneous, but this Court *independently* applies those facts to the law. *Strickland*, 466 U. S. at 698; *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993). Because, as is discussed below, Holsey has failed to show that the *absence* of his trial counsel's alleged deficiencies in reasonable probability would have resulted in a different outcome in either phase of his trial, this Court reverses the portion of the habeas court's order granting certain ineffective assistance claims and affirms the portion of the habeas court's order denying other ineffective assistance claims. *Lajara*, 263 Ga. at 440 (3) (quoting *Strickland*, 466 U. S. at 697 (IV) (noting that a court may deny an ineffective assistance claim based solely on the absence of prejudice arising from counsel's alleged deficiencies)).

The Warden contends that the habeas court erred in vacating Holsey's death sentence, which it did based in part upon trial counsel's alleged ineffective assistance in preparing a possible claim that Holsey was guilty but mentally retarded. See OCGA § 17-7-131. Trial counsel obtained funds from the trial court to hire a mental health expert. Trial counsel then hired Dr. Michael Shapiro, a psychologist, who evaluated Holsey in 1996 and found him not to be mentally retarded. Holsey argued in the habeas court that his trial counsel failed to provide Dr. Shapiro certain materials, including the original questionnaires completed by Holsey's family members, Youth Detention Center records, school records, and Department of Corrections records. However, even if this Court accepts that trial counsel failed to provide these materials to Dr. Shapiro and that trial counsel thereby rendered constitutionally-deficient performance, no actual prejudice regarding a possible mental retardation claim can be shown. This is so because, after reviewing the materials he allegedly should have been given by trial counsel before reaching his original

---

Ga. App. 610, 613 (2) (636 SE2d 773) (2006); *Tyler v. State*, 279 Ga. App. 809, 812 (3) (632 SE2d 716) (2006); *Frazier v. State*, 278 Ga. App. 685, 690 (3) (629 SE2d 568) (2006); *Davenport v. State*, 278 Ga. App. 16, 19 (2) (628 SE2d 120) (2006); *Zepp v. State*, 276 Ga. App. 466, 475 (5) (623 SE2d 569) (2005); *Fitz v. State*, 275 Ga. App. 817, 824-825 (4) (622 SE2d 46) (2005); *Cornelius v. State*, 273 Ga. App. 806, 808 (2) (616 SE2d 148) (2005); *Brooks v. State*, 273 Ga. App. 691, 695 (4) (615 SE2d 829) (2005); *Howren v. State*, 271 Ga. App. 55, 58 (5) (608 SE2d 653) (2004); *Hodges v. State*, 260 Ga. App. 483, 486-487 (5) (580 SE2d 614) (2003); *Baker v. State*, 259 Ga. App. 433, 435 (3) (577 SE2d 282) (2003); *Whited v. State*, 258 Ga. App. 195, 200 (8) (573 SE2d 449) (2002); *Holland v. State*, 250 Ga. App. 24, 28 (4) (550 SE2d 433) (2001); *Osborne v. State*, 239 Ga. App. 308, 309 (1) (521 SE2d 226) (1999); *Johnson v. State*, 236 Ga. App. 61, 66 (3) (e) (510 SE2d 918) (1999); *Carl v. State*, 234 Ga. App. 61, 65 (2) (g) (506 SE2d 207) (1998). Although the combined effects of trial counsel's errors should be considered together as one issue, it remains the case that "[t]his State does not recognize the cumulative error rule." *Bridges v. State*, 268 Ga. 700, 708 (9) (492 SE2d 877) (1997).

diagnosis, Dr. Shapiro *re-affirmed* in the habeas proceedings his original, pre-trial opinion that Holsey was not mentally retarded but was, instead, within the "borderline range" of intelligence. Because, even with access to the materials Holsey has now amassed, trial counsel's expert would not have testified that Holsey was mentally retarded, there is no reasonable probability that trial counsel would have chosen to pursue a guilty but mentally retarded verdict or that a jury would have voted for such a verdict if one had been sought.

As is discussed below regarding Holsey's miscarriage of justice claim, Holsey has submitted testimony in his habeas proceedings from experts criticizing Dr. Shapiro's testing and scoring methods. Holsey has also presented testimony from other experts asserting that he is mentally retarded, testimony that is contradicted by expert testimony presented by the Warden. However, the critical issue regarding this portion of Holsey's ineffective assistance claim is what Holsey's *trial* expert, Dr. Shapiro, would have been willing to testify to had he been provided the materials trial counsel allegedly failed to provide. A defendant is not constitutionally entitled to any certain level of effective assistance from experts that are reasonably selected by trial counsel and that are funded within constitutional requirements. *Turpin v. Bennett*, 270 Ga. 584, 587-588 (1) (513 SE2d 478) (1999). This Court concludes that, with what Dr. Shapiro would have been willing to testify to if trial counsel had provided him everything Holsey now contends they should have, there is no reasonable probability of a different outcome with regard to a guilty but mentally retarded verdict.

The Warden next contends that the habeas court erred by vacating Holsey's death sentence on the basis of trial counsel's alleged ineffectiveness in preparing and presenting mitigation evidence. As is discussed above regarding a possible guilty but mentally retarded verdict, even had trial counsel not failed, as we presume for the purpose of this discussion that they did, to provide additional materials to Dr. Shapiro, there would not have been a significant change in Dr. Shapiro's opinion regarding Holsey's mental capabilities. Certainly, counsel could have used testimony from Dr. Shapiro to show that, while not mentally retarded, Holsey had borderline intellectual functioning. However, trial counsel presented *other* evidence of Holsey's mental slowness. That evidence included school records showing Holsey's limited intellect and poor performance, and it included Holsey's Division of Family and Children Services records and Youth Detention Center records showing him to be in "the borderline mental retardation range of intelligence." Furthermore, some relevant portions of the documentary evidence were specifically brought to the jury's attention through witness testimony. Compare *Turpin v. Lipham*, 270 Ga. 208, 210-211 (3) (510 SE2d 32) (1998)

(finding actual prejudice where trial counsel, in a " 'cavalier' fashion," merely "exhorted the jury to read [a] pile of documents during their deliberations"). Potential testimony from Dr. Shapiro, along with the lay testimony Holsey presented in the habeas court regarding his mental slowness, would not have made a significant contribution to his mitigation evidence in light of the evidence trial counsel actually presented.

The Warden argues that the habeas court erred in vacating Holsey's death sentence based on its conclusion that trial counsel should have developed additional evidence regarding Holsey's family and upbringing, including his allegedly having been raised in an impoverished, troubled, and abusive environment and including certain mental health issues regarding his mother and one of his sisters. This Court again accepts, for the purposes of this analysis, that trial counsel performed deficiently. However, even assuming their deficiency, Holsey's claim must fail given the lack of resulting actual prejudice. The additional evidence Holsey has presented in his habeas proceedings, some of it contradicted[2] by the Warden's evidence, is largely cumulative of evidence presented at trial, which highlighted Holsey's limited intelligence, his troubled and abusive home life, his positive contributions at home and elsewhere, and his mother's and sister's mental health issues. Having reviewed both the habeas record and the trial record, including the trial testimony of two of Holsey's sisters and of other witnesses, the trial deposition testimony of Clifford Holsey, Jr., and the non-testimonial material entered into evidence at trial, this Court concludes that introduction of Holsey's new evidence at his trial would not have had an impact on the jury's sentencing deliberations sufficient to help sustain a successful ineffective assistance of counsel claim regarding the sentencing phase.

Holsey asserts in his cross-appeal that trial counsel performed deficiently in preparing and presenting evidence supporting a theory of a second shooter. Holsey argues that, had counsel performed adequately regarding such evidence, there is a reasonable probability that the jury would have returned a sentence less than death, or possibly even a different guilt/innocence phase verdict. Assuming counsel performed deficiently regarding a second shooter theory, this

---

[2] One witness even gave affidavit testimony contradicting his previous affidavit testimony and alleging that a woman on Holsey's habeas team had obtained the previous affidavit by ignoring the witness's actual statements in his interview, by including in the typed affidavit things the witness had specifically denied in the interview, and by then "rushing" the witness when he was presented with the typed affidavit for his signature. The record is not developed on the issue of possible intentional misconduct, but this Court finds the allegations contained in the witness's second affidavit troubling.

Court nevertheless concludes that Holsey has failed to show that the *absence* of those alleged deficiencies would have resulted in a reasonable probability of a different guilt/innocence phase verdict and that he has failed to show prejudice in the sentencing phase sufficient for the success of his overall claim of ineffective assistance in that phase. Each of the components of Holsey's claim regarding a possible second shooter is discussed immediately below.

Holsey first argues that trial counsel failed to show that Deputy Robinson's head wound was inconsistent with there having been only one shooter. This Court's review of the habeas and trial records indicates that Holsey's habeas evidence about the head wound would not have made a significant contribution toward the jury's possibly finding that a second shooter was involved, particularly when this Court notes that there was expert testimony indicating that Deputy Robinson's head wound could have been sustained as he avoided oncoming shots from a lone shooter and further notes the lay witness testimony that on balance strongly suggests only one person exited the Probe. Furthermore, even if the jury might have believed a second shooter was involved, it still would have believed that Holsey was *one* of the shooters and that he, given his connection to the weapon that fired the lethal shot to the victim's head, was likely the one who fired that shot.

Holsey next argues that trial counsel performed deficiently in failing to cross-examine Janie Forte sufficiently regarding the possibility that she heard three voices during the murder. However, Holsey's argument regarding this witness relies entirely on a handwritten notation, apparently made by Detective Russell Blenk, concerning a statement possibly made by Janie Forte when she was interviewed after the murder. Holsey failed to make any proper use of this hearsay in the habeas court. See *Waldrip v. Head*, 279 Ga. 826, 827-828 (II) (A) (620 SE2d 829) (2005) (document containing hearsay not considered as admissible evidence on appeal). Holsey also failed to elicit testimony directly from Forte in the habeas proceedings but, instead, merely provided an inadmissible hearsay account of Forte's alleged statements to an associate of Holsey's habeas counsel who allegedly had a conversation with Forte. Accordingly, this Court concludes that Holsey has failed to show any actual prejudice stemming from his trial counsel's alleged deficiencies regarding their cross-examination of Forte.

Holsey also argues that his trial counsel performed deficiently in failing to make use of evidence that a bullet not matching either the weapon that inflicted the fatal shot or the victim's weapon was discovered at the motel. However, Holsey suffered no significant prejudice from this alleged deficiency, as even his habeas expert testified that the bullet was recovered weeks after the murder, that

he could not determine when the bullet was fired, and that the bullet might have been fired "from a half mile away."

Holsey claims his trial counsel performed deficiently in failing to make use of a "BOLO," which is a notice for officers to "be on the lookout," regarding two African-American males in a red Ford Probe. However, no prejudice resulted from trial counsel's alleged deficiency regarding the "BOLO," because the evidence at trial, which is confirmed by the evidence in the habeas court, indicated that officers had initially suspected there were two perpetrators based on an officer's prior contact with two African-American men in *another* red Ford Probe who were eventually detained and found to have nothing to do with the murder.

Finally, Holsey argues that his trial counsel performed deficiently in failing to demonstrate the alleged inadequacy of the State's investigation, including its failure to take certain photographs, to conduct certain testing, to conduct certain fingerprint analyses, and to record evidence on a to-scale diagram. In light of the testimony actually elicited by trial counsel regarding the State's investigation and in light of Holsey's failure to show that a more thorough investigation by the State would have yielded any significant exculpatory or mitigating evidence, this Court finds that no actual prejudice has been shown regarding trial counsel's allegedly-deficient performance regarding the State's investigation.

Having accepted for the sake of its analysis that trial counsel performed deficiently in the ways alleged, and having reviewed both the habeas record and the trial record, this Court concludes that Holsey has failed to show prejudice sufficient to sustain his ineffective assistance of counsel claim regarding either phase of his trial.[3]

## III. Alleged Mental Retardation

As is discussed above, Holsey's trial counsel did not raise a claim of alleged mental retardation in the guilt/innocence phase of Holsey's trial. See OCGA § 17-7-131. However, Holsey has asserted for the first time in his habeas petition that he is mentally retarded. The habeas court was correct in considering this new claim, because this Court, under the "miscarriage of justice" exception to the rule of procedural default, has authorized habeas courts to consider alleged mental retardation when the issue was not raised at trial. *Turpin v. Hill*, 269 Ga. 302, 303 (3) (b) (498 SE2d 52) (1998). See OCGA

---

[3] To the extent Holsey's cross-appeal can be construed as having adequately raised a parallel claim of alleged evidence suppression, that claim is also denied. See *Burgeson v. State*, 267 Ga. 102, 104 (2) (475 SE2d 580) (1996) (setting out the elements of an evidence suppression claim).

§ 9-14-48 (d). The habeas court was also correct in applying the "beyond a reasonable doubt" standard to Holsey's claim. *Head v. Hill*, 277 Ga. 255, 260-263 (II) (B) (587 SE2d 613) (2003); *Stephens v. State*, 270 Ga. 354, 357 (2) (509 SE2d 605) (1998).

Holsey presented testimony from three psychologists indicating that he is mentally retarded. The Warden presented testimony from a psychiatrist, from the psychologist consulted originally by trial counsel, and from another psychologist, all indicating that Holsey is *not* mentally retarded. There was no dispute among the experts who testified, nor was there any conflict in the non-testimonial portions of the record, regarding the fact that Holsey has consistently scored near the highest intelligence quotient score in the mild mental retardation range as defined in the mental health field. However, the experts disagreed about the reasons for Holsey's poor performance on his intelligence tests and, more importantly, about the effect his mental slowness has had on his adaptive behavior. See OCGA § 17-7-131 (a) (3) (establishing that a mental retardation claim must include a showing of impairments in intellectual functioning "resulting in or associated with impairments in adaptive behavior"). In light of the conflicting evidence, including the expert and lay testimony and the non-testimonial evidence, this Court concludes that the habeas court did not err in finding that Holsey had failed to prove his alleged mental retardation beyond a reasonable doubt.

*Judgment reversed in Case No. S06A1776. Judgment affirmed in Case No. S06X1777. All the Justices concur.*

DECIDED FEBRUARY 26, 2007 —
RECONSIDERATION DENIED MARCH 27, 2007.

*Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Elizabeth A. Burton, Assistant Attorney General*, for appellant.

*Brian S. Kammer, Thomas H. Dunn, Harrington & Mahoney, James P. Harrington*, for appellee.