## S07A1324. SMITH v. THE STATE.
(657 SE2d 523)

MELTON, Justice.

Following a jury trial, Danyel Lature Smith was convicted of felony murder and aggravated battery in connection with the death of his son Chandler.[1] Smith appeals, contending, among other things, that he received ineffective assistance of counsel, that the evidence presented at trial was insufficient to sustain his convictions, and that the trial court erred in its jury instructions and with respect to several evidentiary matters. Finding no error, we affirm.

1. Viewed in the light most favorable to the verdict, the evidence shows that on April 29, 2002, two-month-old Chandler was taken by his parents, Marsha Collins and Smith, to his pediatrician for a checkup. Following the checkup, Chandler was declared to be in good health. Chandler was then released from the doctor's office and into his parents' care. On the way home, the family stopped at a QuikTrip gas station. That afternoon, Collins left Chandler with Smith while she attended an appointment to apply for WIC public assistance. While Collins was at her appointment, she called Smith and told him to bring the baby to the WIC office. While Smith was en route to Collins' location with Chandler, Collins called him again, and Smith told Collins that Chandler was not breathing. Smith arrived at the WIC office with Chandler, who was limp and cold and had blood running from his nose. Collins called 911, and emergency responders rushed Chandler to the emergency room. At the emergency room, Chandler's heartbeat was restored, but he remained comatose, unresponsive, and unable to breathe on his own. A CT scan of Chandler's brain revealed a skull fracture, a hematoma, and swelling of the brain. Based on the CT scan as well as Chandler's broken wrists, retinal hemorrhages, and the quick onset of his symptoms, Chandler was diagnosed as a "shaken baby," who had been subjected to vigorous shaking that was probably coupled with impact. Smith was the only person with Chandler during and immediately prior to the onset of his symptoms. The nature of Chandler's injuries did not indicate that they were self-inflicted, and the injuries were inconsistent with a simple fall or accidental trauma. After seven days in the hospital without any evidence of brain function, Chandler was removed from

---

[1] On July 24, 2002, Smith was indicted for felony murder, cruelty to children in the first degree, and aggravated battery. On November 21, 2003, Smith was found guilty on all three counts and sentenced to life for felony murder plus twenty years concurrent for aggravated battery. The trial court merged the cruelty to children count into the felony murder count for sentencing purposes. Smith filed a motion for new trial on December 10, 2003. On April 2, 2007, the motion was denied. Smith's timely appeal was docketed in this Court on May 2, 2007, and was orally argued on September 24, 2007.

life support and died on May 6, 2002. A physical examination of Chandler's body after his death revealed abdominal bruising that was consistent with the spacing of adult knuckles.

The evidence was sufficient to enable a rational jury to find Smith guilty beyond a reasonable doubt of all the offenses for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see also OCGA § 24-4-6 (conviction based on circumstantial evidence authorized where the evidence "exclude[s] every other reasonable hypothesis save that of the guilt of the accused").

2. Smith contends that trial counsel rendered ineffective assistance for (a) failing to competently investigate the medical evidence prior to trial and failing to present additional medical evidence at trial, (b) failing to adequately prepare his defense theories, (c) failing to contact or subpoena a paramedic who had been called to the Collins residence in March 2002 to treat Chandler for a potential seizure, and (d) failing to seek the disqualification of the State's medical expert due to a conflict of interest. In order to succeed on a claim of ineffective assistance, Smith must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). In reviewing the trial court's decision, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. [Cit.]" (Punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Smith's trial counsel investigated the medical evidence by meeting with his own expert witness on more than one occasion, by providing the expert with Chandler's medical records and all of the discovery materials in the case, and by conducting medical research on his own. Trial counsel's consultation with the expert revealed that further medical evidence would not have been favorable to Smith, because his own expert believed that Chandler's injuries were consistent with physical abuse that occurred on the day of the alleged crime. Counsel therefore made a reasonable strategic decision not to pursue further medical evidence in developing Smith's defense. See *Schofield v. Holsey*, 281 Ga. 809 (II) (642 SE2d 56) (2007) (trial counsel not ineffective for failing to provide additional mental health evidence to expert where such evidence would not have changed expert's opinion that defendant was not mentally retarded). Even if Smith now disagrees with the conclusions drawn by the expert and his counsel's decision to cease further medical investigation after consulting with the expert, the reasonableness of counsel's conduct must be viewed under the circumstances of the case that existed at

the time counsel's decision was made and cannot be judged by hindsight. *Turpin v. Bennett*, 270 Ga. 584 (2) (513 SE2d 478) (1999); see also *Schofield*, supra, 281 Ga. at 813 (II) ("A defendant is not constitutionally entitled to any certain level of effective assistance from experts that are reasonably selected by trial counsel."). Because evidence supports the conclusion that trial counsel made a reasonable, strategic decision not to pursue additional medical investigations after consulting with his expert, Smith's ineffective assistance claim in this regard fails.

(b) The transcript reveals that trial counsel's defense strategy was to show that Smith did not and would not harm Chandler, and that Collins could have been the one who hurt Chandler because she had been alone with the child when the family stopped at a QuikTrip on the day that the child was injured.[2] To pursue his theories, counsel called nine witnesses who attested to Smith's good character, and called Smith himself, who vehemently denied doing anything at all to Chandler before the sudden onset of the child's symptoms. Smith further testified that Collins was alone in the car with Chandler for 20 minutes when the family stopped at a QuikTrip and Smith went inside to buy lottery tickets. Trial counsel also got Collins to admit on cross-examination that she used to refer to Smith as "Mr. Mom." Evidence supports the trial court's conclusion that trial counsel effectively developed his defense theories. *Fairclough v. State*, 276 Ga. 602 (4) (581 SE2d 3) (2003) (strategic decisions regarding defense theories, which witnesses to call, and extent of cross-examination are within the exclusive province of the attorney after consultation with the client and do not amount to ineffective assistance). The fact that appellate counsel would have pursued the defense in different ways or would have chosen to call different witnesses or cross-examine Collins in a different way does not render trial counsel ineffective. Indeed,

> [w]hile other counsel, had they represented appellant, may have exercised different judgment, the fact that trial counsel chose to try the case in the manner in which it was tried, and made certain difficult decisions regarding the defense tactics to be employed with which appellant and his present counsel now disagree, does not require a finding that the representation below was so inadequate as to amount to a denial of effective assistance of counsel.

---

[2] Trial counsel testified at the motion for new trial hearing that he also had a theory that, if Smith had harmed Chandler, then the harm must have occurred by accident. However, the trial transcript reveals that counsel did not actually pursue such a theory at trial.

(Citation omitted.) *Lewis v. State*, 246 Ga. 101, 105 (3) (268 SE2d 915) (1980); see also *Turpin*, 270 Ga. at 590 (2).[3]

(c) Strategic decisions regarding which defense theories to pursue and which witnesses to call are within the exclusive province of the attorney after consultation with the client and do not amount to ineffective assistance. *Fairclough*, supra. Trial counsel's defense theory had nothing to do with the idea that Chandler's death may have resulted from a prior seizure or a preexisting injury. His defense strategy was to show that Smith simply had nothing to do with Chandler's death and that Collins had the opportunity to harm Chandler on the day of the alleged crime. Thus, there was no need for the testimony of the paramedic who had been called to Collins' house a month prior to the date of the crime. Again, the fact that, in hindsight, appellate counsel would have advanced a different theory at trial than that of trial counsel does not amount to a showing of ineffective assistance. *Lewis*, supra.

(d) Trial counsel testified at the motion for new trial hearing that he made a strategic decision to attack the credibility of the State's expert by using the expert's conflict of interest against him during cross-examination. Such a strategy was reasonable, especially considering the fact that trial counsel's own defense expert had not placed counsel in a position to directly attack the medical evidence being presented by the State. Trial counsel was not ineffective for deciding to attack the expert's credibility on cross-examination instead of moving to have the expert excluded from testifying. See *McDaniel v. State*, 279 Ga. 801 (2) (c) (621 SE2d 424) (2005).

3. Smith asserts that the trial court erred in failing to instruct the jury as to the defense of accident. However, the transcript reveals that Smith presented no evidence of accident. Instead, he vehemently denied having committed any act or having done anything to harm Chandler. Even when directly asked whether Chandler's injuries could have occurred by accident, Smith continued to deny that the injuries could have occurred by accident. Smith therefore was not entitled to an instruction on the defense of accident. See, e.g., *Washington v. State*, 249 Ga. 728 (2) (292 SE2d 836) (1982).

---

[3] To the extent that Smith argues that trial counsel was ineffective for failing to object to statements by Collins during cross-examination regarding Smith's alleged shortcomings as a father and boyfriend, Smith has failed to show that the outcome of the trial would have been different if counsel had objected to these statements. Indeed, counsel presented several witnesses to attest to Smith's good character, and even got Ms. Collins to refer to Smith as Mr. Mom on cross-examination. Moreover, even Smith himself testified as to his virtues as a father. Due to the fact that much of trial counsel's strategy involved placing Smith's good character in issue, Smith cannot show that counsel's failure to object to the isolated statements by Collins during his cross-examination of her resulted in any prejudice to him. Therefore, his ineffective assistance claim fails. See *Harris v. State*, 279 Ga. 522 (6) (615 SE2d 532) (2005).

4. Smith argues that the trial court erred in admitting post-incision autopsy photographs of Chandler. However, "[p]ost-incision autopsy photographs are admissible if necessary to show some material fact that becomes apparent only due to the autopsy." (Citation and punctuation omitted.) *Banks v. State*, 281 Ga. 678, 680 (2) (642 SE2d 679) (2007). Here, the State's medical examiner testified that the full extent of Chandler's injuries was not detectable prior to the autopsy and that the presence of blood on the brain was only apparent because of the autopsy. Further, the medical examiner explained that the photographs of Chandler's brain would assist him in explaining and describing Chandler's injuries to the jury. The trial court therefore did not abuse its discretion in admitting the autopsy photographs into evidence. See id.

5. Smith contends that the trial court erred in refusing to allow counsel to impeach Collins with her prior inconsistent statements on a WIC financial assistance application. However, "[a] witness may not be impeached based upon a discrepancy relating to a wholly immaterial matter." (Citation omitted.) *Brown v. State*, 260 Ga. 153, 156 (4) (391 SE2d 108) (1990). The issue for the jury to determine at trial was whether Smith or someone else injured Chandler, not whether Collins misrepresented her income on a public assistance application. Even if there were discrepancies between the statements that Collins made on her WIC application, such discrepancies had nothing to do with the manner in which Chandler suffered his injuries. The trial court properly ruled that Collins' prior statements on the aid application were irrelevant and could not be used as a means of impeachment.

6. Smith urges that the trial court erred in refusing to allow him to cross-examine Collins about her alleged refusal to speak with police about Chandler's death while deprivation proceedings relating to her other son were still pending. This argument, however, mischaracterizes the record. The record reveals that Collins did not refuse to speak to the police, but that her court-appointed attorney in the deprivation matter allegedly contacted the police and told them not to contact Collins about Chandler's death until the deprivation proceedings relating to her other son had concluded. Smith desired to cross-examine Collins about the actions of her court-appointed attorney in contacting the police and telling them not to contact Collins. Because such cross-examination would have called for hearsay testimony relating to what Collins' attorney allegedly told police, the trial court properly disallowed it. See *Buttram v. State*, 280 Ga. 595 (10) (631 SE2d 642) (2006); see also *Al-Amin v. State*, 278 Ga. 74, 84 (14) (597 SE2d 332) (2004) ("While a defendant is entitled to effective cross-examination, he is not entitled to unfettered cross-examination,

and the trial court has broad discretion in limiting its scope") (citation and punctuation omitted).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 28, 2008 —
RECONSIDERATION DENIED MARCH 10, 2008.

*L. David Wolfe, Robert A. Susor,* for appellant.
*Daniel J. Porter, District Attorney, Julie L. Johnson, Assistant District Attorney, Thurbert E. Baker, Attorney General, Elizabeth A. Harris, Assistant Attorney General,* for appellee.