## A05A1383. MANN v. THE STATE.
### (624 SE2d 208)

BERNES, Judge.

A Henry County jury convicted appellant Richard Mann, Jr. of aggravated assault and two counts of aggravated battery. Mann appeals from the denial of his motion for new trial contending he received ineffective assistance of counsel in the presentation of his insanity defense. We find no error and affirm.

Viewed most favorably to the verdict, the evidence shows that Mann and the victim separated after a five-year relationship that had been marked by numerous incidents of physical violence.[1] After the separation, the victim rejected Mann's numerous attempts to persuade her to reconcile.

On January 5, 2001, Mann drove to the GNC store where the victim worked and parked his truck in the back of the shopping center where the store was located. Shortly before 11:00 p.m., the victim noticed Mann in the store and asked what he was doing there. Mann replied he needed to talk to her. Instead of speaking to Mann at that time, the victim continued to wait on customers and answered the phone.

After all the customers left the store, Mann attacked the victim with a glass bottle. Mann first struck the victim's eye with the bottle and then began to strike her about the head until she passed out. When the victim regained consciousness, Mann was straddling her, cutting her face, and stabbing her with a knife. As Mann was slashing the victim's face, he threatened to kill her and yelled, "see if anyone else wants you." The victim tried to get away from Mann and crawled to the door. As she crawled away, Mann stabbed her legs. The victim finally was able to escape from the store after she kicked Mann in the groin. An employee of another store in the shopping center called the police. As a result of the attack, the victim suffered numerous stab wounds on her face, chest and hands, underwent surgery several times and was temporarily blind in her left eye. Her body remained permanently scarred.

---

[1] The victim testified that during a trip to Florida in 1998, Mann became upset, pointed a pistol at her, and threatened to kill her. A few months before the instant incident, Mann had appeared uninvited at the victim's workplace and pushed store products off a shelf after the victim expressed unwillingness to reconcile. He refused to leave until an employee threatened to call the police. In another incident, Mann approached the victim at her workplace and refused to leave until she agreed to call him later. The victim had also called the police on several prior occasions when Mann appeared at her residence uninvited, threatened to knock her door down, and refused to leave. One such occurrence took place one month before the instant incident. The victim further testified that the police were called after Mann entered her friends' residence and threatened her with a gun.

Mann fled the store and drove away in his truck. He was apprehended shortly thereafter by the police. At the time of his arrest, blood was visible on Mann's hands, face, and jacket. A loaded handgun was recovered by police from Mann's truck, but the knife used during the attack was never found.

After his arrest, Mann gave a statement to the police in which he admitted going to the victim's workplace and entering the store through a back door. Mann claimed he intended to confront the victim about her "running around," that the victim had laughed at him at some point in time and that he had no further recollection past that point until he was arrested.

At trial, Mann contended that he was insane at the time the acts were committed and presented the expert testimony of Dr. Jack Farrar, a licensed psychologist who opined that Mann was in a dissociative state at the time of the crime and did not know right from wrong. Dr. Farrar testified that his conclusions were based, inter alia, upon his own interviews and testing of Mann as well as the interviews and test results of Dr. James Powell, a licensed psychologist who had tested and interviewed Mann on January 21, 2001 and on February 4, 2001 and with whom Dr. Farrar had consulted. Dr. Farrar testified without objection to certain findings and test results of Dr. Powell.

At the conclusion of his case, Mann's counsel also attempted to elicit testimony from Dr. Powell on the issue of Mann's mental capacity.[2] After Dr. Powell testified as to his occupation and educational background, the State objected on the ground that Mann's counsel had failed to comply with discovery by failing to give notice that Dr. Powell would be a defense witness and by failing to provide the State with Dr. Powell's written report until approximately 1:00 p.m. on the afternoon of trial.[3] The trial court sustained the State's objection and excluded Dr. Powell's testimony as a result of defense counsel's failure to comply with the discovery requirements of OCGA §§ 17-16-4 (b) (2), 17-16-7 and 17-16-8 (a).

In rebuttal, the State introduced the testimony of psychiatrist Dr. Richard Elliott, who testified that he had reviewed the defense's evaluative reports, had interviewed others who knew Mann, and had also interviewed Mann. Dr. Elliott concluded that Mann did not suffer

---

[2] Earlier at the trial, Mann's counsel announced that he was uncertain whether Dr. Powell would be called as a witness.

[3] Mann's trial counsel admitted that he had opted in for discovery pursuant to OCGA § 17-16-2 (a), yet had failed to designate Dr. Powell on a witness list and had failed to furnish a copy of Dr. Powell's written report until the afternoon of trial. In fact, Mann's counsel admitted that he had not produced any documents or reports for any of his witnesses. The State argued that although defense counsel had provided an oral witness list prior to trial, Dr. Powell had not been disclosed on that oral list.

from mental illness, and did not lack the capacity to distinguish right from wrong nor suffer from a delusional compulsion at the time of the incident. Dr. Elliott further testified that Mann's conduct showed planning and premeditation and that Mann's acts of discarding the weapon and fleeing from the scene indicated his awareness of the wrongfulness of his acts.

After hearing the testimony from all of the witnesses, including Dr. Farrar and Dr. Elliott, the jury returned a verdict of guilty on all counts.

In his motion for new trial, Mann alleged that his trial counsel was ineffective for failing to comply with discovery mandates which resulted in the exclusion of Dr. Powell's testimony. Following a hearing on Mann's motion, which included the testimony of both Dr. Powell and Mann's trial counsel, the trial court agreed that trial counsel's failure to comply with discovery constituted deficient performance. However, it determined that trial counsel's error did not affect the outcome of the trial since Mann's expert witness, Dr. Farrar, essentially testified to the same facts and conclusions provided by Dr. Powell. As such, Mann's motion for new trial was denied.

"To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984)." (Citation and punctuation omitted.) *Beck v. State*, 250 Ga. App. 654, 662 (8) (551 SE2d 68) (2001). "The test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel. [Cit.]" Id.

> [A] trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous. The issue of ineffective assistance is a mixed question of law and fact. Under this standard, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations omitted.) Id. at 661-662 (8).

The trial court's findings as to both prongs of the *Strickland* analysis were supported by the record. Thus, the trial court was authorized to find that trial counsel's failure to comply with discovery constituted deficient performance.[4] Likewise, the trial court was

---

[4] The record is silent as to trial counsel's reason for his failure to comply with discovery and in the absence of testimony explaining the trial attorney's rationale, we presume that his

authorized to find that there was no reasonable probability that the outcome of the trial would have been different had Dr. Powell testified. The record shows that Dr. Powell's trial testimony would have been cumulative to that of Dr. Farrar and that the jury was made aware of Dr. Powell's findings through the testimony of Dr. Farrar.[5] "Trial counsel's failure to present cumulative evidence does not amount to ineffective assistance." (Footnote omitted.) *Lyons v. State*, 269 Ga. App. 27, 31 (3) (d) (602 SE2d 917) (2004). See also *Adams v. State*, 275 Ga. 867, 868 (3) (572 SE2d 545) (2002); *DeYoung v. State*, 268 Ga. 780, 786 (5) (493 SE2d 157) (1997) (finding that the failure of trial counsel to call certain mitigation witnesses did not constitute ineffective assistance when the testimony would have been similar to that presented by the witnesses who did testify); *Brown v. State*, 268 Ga. App. 24, 27-28 (2) (601 SE2d 405) (2004) ("[T]he exclusion of what clearly would have been cumulative evidence was certainly harmless.") (punctuation and footnote omitted); *Beck*, 250 Ga. App. at 662-663 (8).

Moreover, the trial court's determination that Mann was not prejudiced by trial counsel's deficient performance was reasonable in view of Mann's burden of proving his insanity by a preponderance of the evidence and in light of strong testimony from the State's psychiatrist showing that Mann knew right from wrong at the time of the incident; evidence tending to show that Mann deliberately planned and orchestrated the crime; and evidence of Mann's prior acts of violence against the victim. See *Williams v. State*, 256 Ga. App. 249, 251-252 (1) (568 SE2d 132) (2002) (finding that exclusion of the expert's testimony due to defense counsel's noncompliance with discovery requirements was harmless error in light of evidence of the defendant's guilt).

Accordingly, we conclude that trial counsel's error did not prejudice the defense and Mann's ineffective assistance of counsel claim fails.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

---

decision was strategic. While ordinarily trial strategy and tactic do not equate with ineffective assistance of counsel, the trial court was authorized to find the tactic under the facts of this case to be so patently unreasonable that no competent attorney would have made it. See *Quimbley v. State*, 276 Ga. App. 174 (622 SE2d 879) (2005).

[5] Mann nevertheless claims that Dr. Powell would have testified more competently than Dr. Farrar. The trial court apparently rejected this claim and, we defer to the trial court who had an opportunity to observe both witnesses. See *Buice v. State*, 239 Ga. App. 52, 61 (6) (b) (520 SE2d 258) (1999); *Lee v. State*, 205 Ga. App. 139, 140-141 (421 SE2d 301) (1992) (determining the credibility of the witnesses at a motion for new trial hearing is a matter within the trial court's discretion).

DECIDED NOVEMBER 22, 2005 —
RECONSIDERATION DENIED DECEMBER 7, 2005 — 

*Sexton & Morris, Joseph S. Key*, for appellant.
*Tommy K. Floyd, District Attorney, James L. Wright III, David E. Slemons, Assistant District Attorneys*, for appellee.