S12A0910, S12X0945. HUMPHREY v. RILEY; and vice versa.
(731 SE2d 740)

HUNSTEIN, Chief Justice.

A jury convicted William David Riley of murdering his three children and of first degree arson, and the jury imposed death

sentences for the murders. This Court unanimously affirmed Riley's convictions and sentences in 2004. See *Riley v. State*, 278 Ga. 677 (604 SE2d 488) (2004). Riley filed a petition for a writ of habeas corpus on September 8, 2005, and he amended his petition on July 31, 2007. The habeas court held an evidentiary hearing on March 24-27, 2008. The habeas court granted Riley's petition in an order filed on January 20, 2012, vacating both Riley's convictions and his sentences. The Warden has appealed in Case No. S12A0910, and Riley has cross-appealed in Case No. S12X0945. We reverse the habeas court's decision to vacate Riley's convictions and sentences in the Warden's appeal, we affirm the habeas court's denial of relief on the grounds addressed in Riley's cross-appeal, and we remand for the consideration of Riley's ineffective assistance of appellate counsel claim.

## I. *Factual Background*

The evidence at trial showed the following facts. On August 16, 2000, there was a fire at the mobile home rented by Riley, who lived with the following: his girlfriend, Jacqueline Hampton; his three children, Ashley, William, and Samantha; and a friend who slept on the couch, Wayne Atnip. All of the adults escaped the fire, although no one but Riley was fully clothed. All three children died in their bedroom. Firefighters and neighbors testified that Riley seemed unemotional, that he did not make efforts to save his children other than banging on the side of the home a few times and perhaps breaking the children's window, that he was wearing a full set of clothes and boots, that he had some soot on his face and in his nasal passages and had some singed hairs in his nasal passages, but that he had no burns on his body and had no singed hairs on his arms.[1]

Riley's former girlfriend testified that he had used derogatory names for the children, had forced the children to stay in their rooms "at all times when he was at home," and had threatened that he would kill the children before he would allow the Department of Family and Children Services to take them. Other testimony showed that Riley was having financial problems, that he was two days away from being evicted, and that he had stated previously that he would burn his home before he would allow himself to be evicted. His wife testified that he asked her about a week before the fire if she would take the children but that she told him that she was not financially able to do so and did not have room for them. Three days before the fire,

---

[1] Upon our review of the record, we find the assertion in Riley's brief filed in the Warden's appeal that he was treated at the scene of the fire for "injuries" to be disingenuous.

neighbors heard Riley say that he wished that his girlfriend and children were dead. Just hours before the fire, neighbors heard a loud, protracted argument between Riley and his girlfriend.

After the fire, Riley suggested at the scene of the murders that the fire might have been caused by an electrical short. He stated that he had attempted to reach into the small room where the children and fire were located but that he could not stand the intense heat. An arson investigator testified that he found no problems with the electrical system, appliances, furnace, or water heater during his inspection after the fire. A "certified chief electrical inspector," who had inspected the home in May 2000, testified that he had found no electrical problems at that time.[2] Riley's landlord and the man in charge of maintenance at the mobile home park both testified that Riley had not made any complaints about the electrical system in his home. A lighter was found on the ground eight feet away from the home.

In a second interview after the fire, Riley began to change his story: he now claimed that he had intentionally set fire to the corner of his son's bed as his children slept; claimed that he set the fire only to scare his girlfriend; and claimed that, by the time he returned to the children's small bedroom, the fire had grown out of control and he was unable to reach in to save them. A fellow inmate testified that Riley had admitted that he started the fire while his children lay in their bed and that Riley had stated that he was planning to "pretend that he was out of it" when the fire began and to claim that the fire was caused by "faulty wiring."

## II. *Ineffective Assistance of Trial Counsel Claim*

To prevail on his ineffective assistance of trial counsel claim, Riley must show that his trial counsel rendered constitutionally deficient performance and that actual prejudice of constitutional proportions resulted. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783-784 (1) (325 SE2d 362) (1985). To show sufficient prejudice, Riley must show that "there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding

---

[2] There is habeas testimony in which a witness confirmed the opinion that "that trailer was right" at the time of his inspection before the fire. The habeas testimony to which we refer, which was presented by Riley, appears to be from this same expert who testified at trial, although the first name listed in the habeas record differs from that in the trial record. If there are two witnesses involved, it would not affect our reasoning here.

would have been different [cit.]." *Smith*, 253 Ga. at 783 (1). We accept the habeas court's findings of fact unless they are clearly erroneous, but we apply the facts to the law de novo. *Strickland*, 466 U. S. at 698; *Head v. Carr*, 273 Ga. 613, 616 (4) (544 SE2d 409) (2001). We conclude that the habeas court erred by concluding that there is a reasonable probability that Riley's trial counsel's deficiencies changed the outcome of his trial and, therefore, erred by granting relief based on Riley's ineffective assistance of trial counsel claim. See *Schofield v. Holsey*, 281 Ga. 809, 811-812, n. 1 (642 SE2d 56) (2007) (holding that the combined effect of trial counsel's deficiencies should be considered); *Lajara v. State*, 263 Ga. 438, 440-441 (3) (435 SE2d 600) (1993) (noting that an ineffective assistance of counsel claim can be resolved based solely on a lack of prejudice without addressing the separate question of whether trial counsel actually performed deficiently).

A. *Failure to Provide Timely Discovery*

The trial court found that trial counsel had failed to comply with pre-trial discovery requirements and, therefore, excluded testimony from Dr. James Stark, a psychologist, regarding whether Riley's lack of emotion at the scene of the murders was due to a personality disorder.[3] We held on direct appeal that any error in excluding this testimony was "harmless in light of all the other evidence." *Riley*, 278 Ga. at 683 (4). We now also hold that any deficient performance by trial counsel in failing to disclose this testimony pre-trial was not significantly prejudicial when considered in the context of Riley's overall ineffective assistance of counsel claim, which we analyze as a unified claim below in Division II (K). See *Holsey*, 281 Ga. at 811-812, n. 1.

B. *Arson Expert*

The record shows that trial counsel consulted with two arson experts. One of those experts, John Lentini, visited the scene of the murders and inspected the remains of the home, specifically including the circuit breaker. Lentini gave an unfavorable opinion regarding Riley's guilt based on his inability to determine that the fire was caused accidentally and based on Riley's inculpatory statements. Trial counsel also consulted with a second expert, William Dodd. Riley claims that his trial counsel performed deficiently by retaining

---

[3] We assume here for the purposes of our analysis that testimony from Dr. Stark on Riley's lack of emotion was excluded by the trial court. However, we note that the trial record, particularly the transcript of a discussion held at the conclusion of testimony in the guilt/innocence phase, suggests that the trial court and trial counsel had a mutual understanding about the details of the trial court's ruling that differs from our assumption here, that the actual ruling was much more accommodating to the defense than has been assumed by Riley's current counsel, and that trial counsel made a strategic choice regarding how he conducted his questioning of Dr. Stark based on his understanding of the trial court's ruling.

Dodd, because Dodd had informed trial counsel that he did not wish to testify at Riley's trial in light of his involvement in another case and his worry that his testimony in Riley's case would be exploited by the State in that other case.

In his habeas testimony, Dodd testified that his investigation into Riley's case was limited to reviewing the reports, photographs, and testimony of the State's expert. He testified that a photograph showed that "most of" the circuit breakers in Riley's home were in the tripped position after the fire, and he generally asserted that the fire damage was inconsistent with Riley's having set the fire at the corner of his children's bed, as Riley had claimed during his interrogation. The record shows that trial counsel consulted with Dodd and used his opinions at trial to cross-examine the State's expert, who was emphatic that he had inspected the home's electrical system and had found no evidence of short circuiting or any tripped circuit breakers during his in-person examination of the scene. The State's expert also offered at trial to provide a further explanation regarding the circuit breakers, but defense counsel changed the subject, and the State never followed up on the matter on redirect examination of the witness.

Riley has not undermined the conclusion that the jury almost certainly made at trial and that it very likely would still have made if Dodd had testified as he did in the habeas court, which is that the expert who personally inspected the circuit breakers and found that none was in the tripped position was in the best position to give an opinion on the relevance of a photograph showing multiple switches in what might seem to be the tripped position. Furthermore, despite his largely general criticisms of the State's expert, which were based on a more limited evaluation than the in-person evaluation by the State's expert and the original defense expert, Dodd was unable in his habeas testimony to specifically identify the cause of the fire. Importantly, Dodd maintained that the fire could have been started with matches or with a lighter, as Riley had admitted during his interrogation that he had done.

Dodd's habeas testimony faulted the State's expert for failing to search more carefully for the remains of a lighter, but any defect in this search was harmless in light of the fact that two witnesses for the State testified that Riley himself had stated that he lit the fire with a lighter. In fact, trial counsel used the failure of the State's expert to find the remains of a lighter to Riley's advantage, by arguing that it discredited testimony regarding Riley's inculpatory statements in which he claimed to have used a lighter to start the fire. Riley also notes that Dodd found some of the damage to be "inconsistent" with the exact location of the fire's origin presented by the State through

Riley's inculpatory statements; however, we find any such inconsistency to be of little consequence, particularly because Riley's inculpatory statements were almost certainly seen by the jury as being an attempt to falsely minimize his actions rather than as being a full confession. Furthermore, the State's expert was confronted at trial with Dodd's theory that the fire could have started in a different location, and he gave a compelling response.

Assuming that trial counsel performed deficiently by choosing Dodd as an expert after receiving an unfavorable opinion from Lentini and then using Dodd as a consultant to prepare for cross-examination of the State's expert rather than as a defense witness,[4] we conclude from our review of both the trial and habeas records that the absence at trial of testimony like Dodd's habeas testimony was not significantly prejudicial when considered in the context of Riley's overall ineffective assistance of counsel claim, which we analyze as a unified claim below in Division II (K). See *Holsey*, 281 Ga. at 811-812, n. 1.

C. *Expert Testimony on Police Interrogations*

Riley's trial counsel attempted to present testimony from Dr. Stark, the defense psychologist, regarding police interrogation tactics and the possibility that false confessions result from such tactics. The trial court excluded the testimony, reasoning that "false confession theory ha[d] not reached a verifiable stage of scientific certainty" and noting that "the knowledge that a false confession c[ould] be obtained from a suspect by police [wa]s not beyond the ken of the average juror," and this Court affirmed that decision on direct appeal. *Riley*, 278 Ga. at 682 (4). Riley argues that his trial counsel rendered ineffective assistance by not retaining an expert with greater expertise whose testimony would have been admissible at trial. We find no prejudice from trial counsel's alleged deficiency for two reasons. First, as we noted on direct appeal, the question of whether someone might be persuaded to give a false confession through persuasive interrogation techniques is "not beyond the ken of the average juror," and, therefore, the absence of expert testimony on that question would not be prejudicial. Id. Indeed, a review of the trial record reveals that trial counsel clearly set the issue of interrogation techniques before the jury through the cross-examination of the investigator who obtained Riley's inculpatory statement and who readily admitted using such techniques with Riley. Id. Second, we have held

---

[4] We note that trial counsel represented to the trial court that his decision not to present testimony from an arson expert was strategic, but we need not address that issue, because we have assumed trial counsel's deficiency in our analysis here.

that testimony from the very expert relied upon by Riley in his habeas hearing was properly excluded in another case, demonstrating that similar testimony would have been properly excluded at Riley's trial. See *Lyons v. State*, 282 Ga. 588, 595-596 (5) (652 SE2d 525) (2007), overruled on other grounds by *Garza v. State*, 284 Ga. 696, 697-703 (1) (670 SE2d 73) (2008), superseded, in turn, by statute as noted by *Hammond v. State*, 289 Ga. 142, 143 (710 SE2d 124) (2011). We find Riley's attempt to distinguish his case from *Lyons* based on the fact that his confession was recorded, whereas Lyons's was not recorded, to be unpersuasive. Whether recorded or not, the question of whether a defendant's inculpatory statement was the result of threats or coercion is a matter a jury can discern for itself. See id. at 595 (5).

We likewise conclude that Riley cannot show either deficient performance or prejudice in connection with trial counsel's failure to object when the trial court indicated that it was "leaning" against allowing testimony about interrogation techniques and false confessions unless Riley first testified that his confession was false. Because such testimony did not concern a matter beyond the understanding of lay jurors, the trial court did not err by further noting that such testimony would be especially unsuitable where it would amount to nothing more than speculation in a vacuum about what allegedly false statements Riley *might* have made. Contrary to Riley's argument, this evidentiary ruling made outside the presence of the jury, essentially on the grounds of relevance, lack of probative value, and undue prejudice, did not amount to a penalty on Riley's decision to remain silent at trial. See *United States v. Libby*, 475 FSupp.2d 73, 92-95 (II) (C) (2) (D.D.C. 2007) ("The defendant was wrong, however, to suggest that the Fifth Amendment prohibits the Court from excluding evidence that is not otherwise relevant unless and until the defendant lays an adequate foundation for its admissibility, even if that foundation can only be laid through his own testimony."). Cf. *Brooks v. Tennessee*, 406 U. S. 605 (92 SC 1891, 32 LE2d 358) (1972) (holding that a statute requiring a defendant to testify before all of his or her other witnesses places an unconstitutional burden on the Fifth Amendment right to remain silent); *Griffin v. California*, 380 U. S. 609 (85 SC 1229, 14 LE2d 106) (1965) (holding that the Fifth Amendment right against self-incrimination forbids a prosecutor from commenting on a defendant's silence or a court from instructing a jury that a defendant's silence is evidence of his or her guilt).

D. *Evidence of Riley's Girlfriend's Guilt*

The record shows that trial counsel considered presenting evidence suggesting that Riley's girlfriend, Jacqueline Hampton, was guilty of the murders. Although trial counsel did mention Hampton's possible motive for the murders in his closing arguments during the

guilt/innocence phase, which was after the evidence was closed and the State was unable to respond with cross-examination or additional witnesses, trial counsel acted reasonably during his presentation of evidence in pursuing the primary theory that the fire had an accidental cause. Furthermore, in light of Riley's multiple admissions that he set the fire, any further attempt to place blame on his girlfriend for intentionally setting the fire would have been unavailing; therefore, Riley cannot show prejudice regarding this portion of his ineffective assistance claim.

E. *911 Recording*

At trial, a volunteer firefighter named Robert Ledford was called by Riley as a witness and testified that he had asked Riley if an automobile near the burning home was his and had then instructed Riley to move the automobile if he wished to save it. Riley has now presented an audio recording of a 911 call in which Ledford is heard telling Riley to move his automobile, and Riley claims that this recording would have aided his defense at trial.[5] Although Ledford testified at trial that Riley was walking in the direction of the automobile with his hands in his pockets when Ledford addressed Riley, we find nothing inconsistent between that testimony and the 911 recording in which Ledford is heard asking Riley if the automobile belonged to him. Instead, we find that the 911 recording would have simply confirmed Ledford's trial testimony if trial counsel had played it for the jury. Even when confronted with the contents of the 911 recording in the habeas court, Ledford reconfirmed his trial testimony that Riley "gave the appearance that he was walking towards the car." Accordingly, we conclude that trial counsel cannot be regarded as having performed deficiently by not presenting the 911 recording at trial, even if it were assumed, despite the lack of any clear evidence of the fact, that trial counsel could have done so. Similarly, we conclude that Riley was not prejudiced by trial counsel's not presenting the recording, regardless of the question of whether trial counsel could have done so.

F. *Mental Health Evidence*

The habeas court concluded that trial counsel rendered ineffective assistance in preparing and presenting mental health evidence.

---

[5] There are documents and testimony in the habeas record that suggest the possibility that Riley actually moved his automobile *twice* during the fire, which, if true, would severely undermine Riley's claim here. However, we cannot consider these documents and this testimony as evidence, because they are hearsay. See *Waldrip v. Head*, 279 Ga. 826, 828 (II) (A) (620 SE2d 829) (2005) (noting that, even absent an objection, "the restrictions on hearsay evidence exist for the very purpose of forbidding such baseless speculation conducted without the truth-seeking benefits of proper evidentiary procedure").

Trial counsel presented testimony from Dr. Stark, the defense psychologist. Dr. Stark testified that he had reviewed documentary materials sent by trial counsel, had spent four hours evaluating Riley, and had administered a number of tests. Dr. Stark concluded that Riley had average intelligence, functioned adequately in academics, was impulsive and docile, was depressed, felt helpless and worthless, was somewhat obsessive compulsive, was introverted and socially anxious, had a low energy level, was probably easily led, was immature, had "some identity confusion," and would be submissive in a relationship. Dr. Stark also testified that it was possible that further testing might show that Riley had "neurotic depression or maybe a more severe depression" and that Riley likely had "some kind of anxiety disorder" and a personality disorder such as "dependent personality and/or histrionic personality and/or borderline personality." Dr. Stark was prepared to testify about Riley's apparently unemotional reaction to the fire, but the trial court disallowed the testimony because of a perceived violation of discovery rules. On direct appeal, this Court found any error in excluding that testimony to have been harmless. See *Riley*, 278 Ga. at 683 (4).

In the habeas court, Riley presented testimony from another psychologist, Dr. Kenneth Benedict. Much of Dr. Benedict's habeas testimony was similar to Dr. Stark's trial testimony. In fact, Dr. Benedict specifically testified that Dr. Stark's findings were not inconsistent with his own, stating, "I don't want to give the impression that I'm disagreeing with the major descriptors in this report [by Dr. Stark]." Dr. Benedict did criticize Dr. Stark for administering tests that Dr. Benedict deemed mere "screening" tests. Dr. Stark acknowledged in his own habeas testimony that Dr. Benedict's testing was more involved, but he maintained that his own findings were not inconsistent with Dr. Benedict's. In his habeas testimony, Dr. Benedict, unlike Dr. Stark, gave specific diagnoses of Riley, namely, pervasive developmental disorder not otherwise specified, which is an autistic spectrum disorder falling short of autism, and cognitive disorder not otherwise specified.[6] However, we find that, in describing the symptoms associated with these diagnoses, Dr. Benedict gave habeas testimony that largely paralleled Dr. Stark's description at trial of Riley's mental and emotional status. Similarly, as we found on direct appeal, we conclude that the absence of testimony specifically connecting the mental and emotional problems described by Dr.

---

[6] There is also expert testimony in the habeas record suggesting that Riley suffers from Post-Traumatic Stress Disorder, but the record is clear that, if Riley suffers from this disorder, it is a result of the fire he was convicted of setting.

Stark at trial to Riley's lack of emotional reaction during the fire was not significantly prejudicial regarding either Riley's convictions or sentences. See *Riley*, 278 Ga. at 683 (4). Thus, even assuming that trial counsel performed deficiently by not having Dr. Stark conduct additional testing to determine a specific label to place on Riley's mental and emotional condition that he described at trial and by not complying with discovery rules to the trial court's satisfaction, we conclude that any such deficiency was not significantly prejudicial when considered in the context of Riley's overall ineffective assistance of counsel claim, which we analyze as a unified claim below in Division II (K).[7] See *Holsey*, 281 Ga. at 811-812, n. 1.

G. *Evidence of Electrical Problems*

In his cross-appeal, Riley argues that his trial counsel rendered ineffective assistance by failing to present evidence of electrical problems. Most of the evidence that Riley presented in the habeas court in support of this claim was not specific to his own home. In addition, we have already determined above that Riley was not significantly prejudiced by using his expert, William Dodd, to prepare for the cross-examination of the State's expert regarding a possible electrical cause of the fire, and that same analysis applies here. Accordingly, we conclude that any deficiency of trial counsel related to evidence of a possible electrical cause of the fire was not significantly prejudicial when considered in the context of Riley's overall ineffective assistance of counsel claim, which we analyze as a unified claim below in Division II (K). See *Holsey*, 281 Ga. at 811-812, n. 1.

H. *Jury Charges on Reckless Conduct and Manslaughter*

In his custodial statement, Riley stated that he had set fire to the corner of a bed in his children's room in an attempt to scare his girlfriend, that he had not intended to set fire to the room and the rest of the home, but that the fire got out of control. In his cross-appeal, Riley argues that his trial counsel rendered ineffective assistance by not arguing more effectively that Riley was entitled to a charge on reckless conduct and involuntary manslaughter under the authority of *Reinhardt v. State*, 263 Ga. 113, 113-114 (2) (428 SE2d 333) (1993), overruled on other grounds by *Vergara v. State*, 283 Ga. 175, 177-178 (1) (657 SE2d 863) (2008). Our review of the trial record reveals that Riley's counsel raised these issues and cited and aptly discussed *Reinhardt* before the trial court. However, as we held on direct appeal when we addressed the same issues and considered counsel's citation of *Reinhardt* in his appellate brief, the argument simply lacked merit.

---

[7] Our analysis here includes a consideration of Riley's claim that additional mental health evidence would have affected the admissibility of his inculpatory statement.

See *Riley*, 278 Ga. at 688 (12). Under these circumstances, we conclude that counsel did not perform deficiently at trial.

Again, Riley's partially inculpatory pre-trial statement and the other evidence at trial could not support a reckless conduct or an involuntary manslaughter conviction. *Riley*, 278 Ga. at 688 (12). Accordingly, there was also no prejudice from trial counsel's failure to argue that a conviction on a lesser included offense to murder was possible and, therefore, that a charge on such a lesser offense was required under the specific authority of *Beck v. Alabama*, 447 U. S. 625 (100 SC 2382, 65 LE2d 392) (1980) (requiring that a charge on a lesser included offense be given where a conviction on that charge could be supported by the evidence and would result in the defendant's avoiding the death penalty).

I. *Abandoned Portions of Ineffective Assistance Claim*

In his cross-appeal, Riley makes several claims of alleged ineffective assistance of trial counsel that are not supported by specific citation or argument, including the claim that trial counsel generally "failed to meet professional norms," failed to consult with an expert on confessions to assist in the cross-examination of Agent Michael Walsingham, failed to object to limitations imposed on voir dire, failed to conduct adequate voir dire on the death penalty and other topics, and failed to use peremptory strikes effectively. We deem these portions of Riley's ineffective assistance claim to be abandoned. See Supreme Court Rule 22; *Head v. Hill*, 277 Ga. 255, 269 (VI) (A) (587 SE2d 613) (2003) (deeming the unsupported portions of an ineffective assistance claim to be abandoned).

J. *Brevity of Sentencing Phase Closing Arguments*

As discussed above, we conclude that trial counsel generally performed reasonably in preparing and presenting *evidence* relevant to the sentencing phase, including the evidence presented at both the sentencing phase and the guilt/innocence phase of Riley's trial, and that trial counsel's limited deficiencies in presenting such evidence did not create prejudice sufficient to support Riley's overall ineffective assistance claim. Likewise, although we note that trial counsel's *closing argument* in the sentencing phase following the close of the evidence was brief, we conclude that any deficiency involved was not significantly prejudicial when considered in the context of Riley's overall ineffective assistance of counsel claim, which we analyze as a unified claim immediately below in Division II (K). See *Holsey*, 281 Ga. at 811-812, n. 1.

K. *Combined Effect of Individual Ineffective Assistance Claims*

We have set out in this Division the instances in which we have found or have assumed trial counsel's performance to have been deficient. We examine the possible effects of these deficiencies in light

of the overwhelming evidence of Riley's guilt, including the evidence of his prior contemplation of arson and murder, the evidence of his motive, and his pre-trial admission that he intentionally set the fire. We conclude, considering the combined effect of counsel's actual and assumed deficiencies, that they did not in reasonable probability change the outcome of either phase of Riley's trial. *Holsey*, 281 Ga. at 811-812, n. 1 (holding that the combined effect of trial counsel's deficiencies should be considered). Thus, the habeas court's contrary conclusion is reversed.

### III. *False Testimony Claim*

In his cross-appeal, Riley argues that the State suppressed exculpatory evidence and knowingly presented false testimony by not disclosing the 911 recording that is discussed above and by then allowing witnesses to testify that Riley moved his automobile before firefighters arrived and that Riley was already moving toward his automobile when volunteer firefighter Robert Ledford told him to move the automobile. The habeas court correctly found that this claim was not raised at trial and on direct appeal and that, therefore, it is barred by procedural default and can be considered only if Riley can satisfy the cause and prejudice test. See *Waldrip v. Head*, 279 Ga. 826, 832 (II) (H) (620 SE2d 829) (2005). However, the question of whether Riley has shown prejudice sufficient to satisfy the cause and prejudice test is "co-extensive" with the underlying merits of his defaulted claim. Id. Because we conclude that Riley cannot show sufficient prejudice, we need not address the additional question of whether he has also failed to show sufficient cause for his failure to raise this claim at trial and on direct appeal.

We have already concluded above that the 911 recording of Ledford telling Riley to move his automobile is fully consistent with Ledford's trial testimony. The recording is similarly consistent with testimony from Riley's neighbors stating that they saw Riley move his automobile before firefighters arrived, because, on balance, the trial testimony was clear that Ledford was off duty, was driving a private vehicle, and arrived in advance of uniformed firefighters driving fire vehicles, which would have made him appear to be a layperson. Because presentation of the 911 recording would not in reasonable probability have changed the outcome of Riley's trial, his evidence suppression claim is meritless. See *Waldrip*, 279 Ga. at 832-833 (II) (H). Because the 911 recording does not show that any of the trial testimony presented by the State was actually false, Riley's claim that the State knowingly presented false testimony is also meritless. See *Hall v. Lance*, 286 Ga. 365, 377 (III) (A) (687 SE2d 809)

(2010) (rejecting a claim where trial testimony was not shown to have been false). Thus, Riley cannot show prejudice sufficient to overcome the cause and prejudice test, regardless of whether he might be able to show cause for his failure to raise these claims at trial and on direct appeal and thus satisfy the cause portion of the cause and prejudice test. Therefore, his underlying claims remain barred by procedural default.

### IV. *Other Abandoned Claims*

Riley lists a number of other claims that are not accompanied by any citation to the record, citation of authority, or argument. Each of these claims was ruled upon in the habeas court and was found either to be res judicata because it was addressed by this Court on direct appeal, barred by procedural default because it was not preserved by objection at trial and raised on direct appeal, or not a cognizable claim. Riley also attempts in a footnote to incorporate all of the arguments he made in the habeas court, without specifying what those arguments entailed and without any citation of authority. Because Riley has not supported these claims with any argument and citation, they are deemed abandoned. See Supreme Court Rule 22; *Hall v. Terrell*, 285 Ga. 448, 457 (III) (679 SE2d 17) (2009) (holding that certain claims "lack[ed] sufficient argument and citation to allow them to be meaningfully addressed"); *Hill*, 277 Ga. at 269 (VI) (A).

### V. *Ineffective Assistance of Appellate Counsel Claims*

Because the habeas court had already granted relief, albeit erroneously, on Riley's ineffective assistance of trial counsel claim, it explicitly declined to also address Riley's ineffective assistance of appellate counsel claim. Therefore, this case is remanded to the habeas court for it to consider that claim. See *Williams v. Hall*, 286 Ga. 280, 282 (687 SE2d 414) (2009) (remanding for the resolution of claims not yet ruled upon in the habeas court after reversing on the ground upon which relief had been erroneously granted); *Turpin v. Bennett*, 270 Ga. 584, 590 (2) (513 SE2d 478) (1999) (same).

*Judgment reversed in Case No. S12A0910. Judgment affirmed in Case No. S12X0945, and case remanded with direction. All the Justices concur.*

DECIDED SEPTEMBER 10, 2012.

*Layla H. Zon, District Attorney, Samuel S. Olens, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Patricia B. Attaway Burton, Senior Assistant Attorney General, Richard Tangum, Assistant Attorney General,* for appellant.

*Alston & Bird, Michael L. Brown, Andrew J. Tuck, Mary E. Wells,* for appellee.