**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 15, 2014**

# In the Court of Appeals of Georgia

A14A0080. MATHIS v. THE STATE.

PHIPPS, Chief Judge.

Following a jury trial, Jonas Mathis was found guilty of armed robbery[1] and aggravated assault.[2] The trial court sentenced Mathis on both crimes. Mathis appeals, contending that the trial court erred by failing to merge the aggravated assault and armed robbery convictions, and by finding that trial counsel provided ineffective assistance. For the reasons that follow, we hold that the two offenses did merge, and

---

[1] OCGA § 16-8-41 (a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon[.]").

[2] OCGA § 16-5-21 (a) ("A person commits the offense of aggravated assault when he or she assaults: . . . (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]").

thus the conviction and sentence for aggravated assault must be vacated and the case remanded for resentencing on that crime. We find no other grounds for reversal, however, and we otherwise affirm the judgment below.

Viewed in the light most favorable to support the verdict,[3] the evidence showed the following. S . C. testified that he was at home on July 24, 2010 when, between 11:30 p. m. and 12:00 midnight, his friend Sarettia Mackey came to the door and asked him to come outside. S. C. walked outside, where he was struck in the head from behind; he believed the assailant used hands and fists to strike him. S. C. fell to the ground and two men kicked him repeatedly as he lay on the ground; Mackey stood and watched. While S. C. was on the ground, one of the assailants struck him in the face with a car battery charger, and the assailants took from his pants pocket his wallet, which contained cash, and his cell phone. One assailant poured gasoline on S. C. while he was on the ground and said, "light him up." S. C. begged them not

---

[3] Mathis challenges the sufficiency of the evidence in the context of trial counsel's failure to move for a directed verdict on the armed robbery charge. See Division 2 (e), infra. See *Smith v. State*, 316 Ga. App. 175 (1) (728 SE2d 808) (2012) ("The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction: the evidence must be sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. The evidence must be viewed in the light most favorable to support the verdict.") (citations omitted); see generally *Nelson v. State*, 285 Ga. 838, 839 (2) (684 SE2d 613) (2009).

to, and, when the men looked away, S. C. fled back into the house. The two male assailants and Mackey then left.

Mackey testified that earlier on the date of the incident she had been riding in Mathis's vehicle with him and his brother, Brian Hurt. Mackey asked Mathis to drive her to S. C.'s house, which he did. The group later left S. C.'s house, and, a short time afterwards, Mathis told Mackey: "if you let me rob [S. C.], we can split the money." The group returned to S. C.'s house, and Mackey asked S. C. to come outside; Mathis and Hurt stood at the side of the house. When S. C. came outside, Mathis approached, and, using his hands, struck S. C. repeatedly. S. C. fell to the ground. Mathis kicked him several times as he lay on the ground, saying "Give me the money, give me the money." S. C. replied that he had no money. Mathis "went through all [S. C.'s] pockets." Mackey added that, besides hitting S. C. with his fists and kicking him, Mathis grabbed a battery charger, hit S. C. in the face, grabbed a gasoline can and poured gasoline on him, and asked for a lighter. Mackey told Mathis to stop. "Then, after that, that's when he had - - that's when he kept going through his pockets and we left."

A witness (B. M.) testified that he had been incarcerated with Mathis in the Putnam County Sheriff's Detention Center. Mathis, whom he had known most of his

life, talked to B. M. at the detention center about the charges pending in this case. Mathis told B. M. that he had hit S. C. when S. C. "came out on the porch to talk to the girl, . . . and knocked him down"; when S. C. was down, Mathis struck him with a battery charger, poured gasoline on him, and took his wallet and cash. B. M. stated that he and Mathis had "[q]uite a few" conversations about the incident, and that the conversations occurred "either in the end of November or beginning of December" 2010.

1. Mathis contends that the trial court erred by failing to merge his conviction for aggravated assault into his conviction for armed robbery,[4] asserting that "[t]here was no proof of a fact required by either count which the other count did not also require." Whether offenses merge is a legal question, which we review de novo.[5]

---

[4] Count 1 of the indictment charged Mathis as a party to the crime of armed robbery (with Hurt and Mackey), alleging that he, with the intent to commit theft, took property of value (to wit: a cell phone, billfold and U. S. currency) from the person of S. C., by use of an offensive weapon (to wit: a battery charger). Count 2 charged Mathis as a party to the crime of aggravated assault (with Hurt and Mackey), alleging that he made an assault upon S. C. with objects (to wit: hands, fists, feet and a battery charger) which, when used offensively against a person, are likely to or actually do result in serious bodily injury. (Mackey pled guilty prior to trial; Hurt was tried jointly with Mathis and found guilty only of robbery by force, as a lesser offense of armed robbery.)

[5] *Haynes v. State*, 322 Ga. App. 57, 60 (2) (743 SE2d 617) (2013).

4

"[Mathis] is partly correct. Because aggravated assault does not require proof of any element that armed robbery does not, convictions for both offenses will merge – but only if the crimes are part of the same act or transaction."[6]

In determining whether the aggravated assault and armed robbery were part of the same act or transaction, we consider when the armed robbery began and when it concluded.[7] The evidence as set forth above shows that the armed robbery began when the assailants, who had gone to S. C.'s home with the intent to rob him, used offensive weapons (here, hands, fists, feet and a battery charger) to take his property.[8] These assaults immediately preceded or were contemporaneous with the taking of

---

[6] *Thomas v. State*, 289 Ga. 877, 880 (3) (717 SE2d 187) (2011) (citations and punctuation omitted).

[7] *McGlasker v. State*, 321 Ga. App. 614 (741 SE2d 303) (2013); see *Bradley v. State*, 292 Ga. 607, 610 (1) (c) (740 SE2d 100) (2013); *Thomas*, supra at 880-881 (3).

[8] See generally *Long v. State*, 287 Ga. 886, 889 (2) (700 SE2d 399) (2010) ("For purposes of armed robbery, the term 'offensive weapon' includes not only weapons which are offensive per se, such as firearms loaded with live ammunition, but also embraces other instrumentalities not normally considered to be offensive weapons in and of themselves but which may be found by a jury to be likely to produce death or great bodily injury depending on the manner and means of their use.") (citations and punctuation omitted).

S. C.'s property.[9] The armed robbery ended when, after demanding money and assaulting S. C., the perpetrators took the property (then left). The crimes were part of the same act or transaction. Consequently, the aggravated assault conviction merged into the armed robbery conviction as a matter of fact.[10] Therefore, the aggravated assault conviction and the sentence entered for it must be vacated and the case remanded to the trial court for resentencing.[11] The armed robbery conviction is affirmed.

2. Mathis contends that the trial court erred by denying his motion for a new trial based on ineffective assistance of trial counsel.

> To prevail on his ineffective assistance of trial counsel claim, [Mathis] must show that his trial counsel rendered constitutionally deficient performance and that actual prejudice of constitutional proportions

---

[9] See *Tookes v. State*, 310 Ga. App. 710, 711 (713 SE2d 882) (2011) ("The force or intimidation essential to robbery must either precede or be contemporaneous with, and not subsequent to, the taking.").

[10] See *Thomas*, supra; *Broyard v. State*, 325 Ga. App. 794, 798 (1) (b) (755 SE2d 36) (2014); *McGlasker*, supra; *Taylor v. State*, 304 Ga. App. 395, 398-399 (1) (696 SE2d 686) (2010).

[11] *Bradley*, supra; see *Sears v. State*, 292 Ga. 64, 73-74 (6) (734 SE2d 345) (2012); *Broyard*, supra at 798; *McGlasker*, supra at 617 (2).

6

resulted. *Strickland v. Washington*[.[12]] To show sufficient prejudice, [Mathis] must show that there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[13]

"The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct."[14]

As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. Matters of trial tactics, even if they appear in hindsight to be questionable, are grounds to find counsel ineffective only if the tactical decision is so patently unreasonable that no competent attorney would have chosen it.[15]

---

[12] 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

[13] *Humphrey v. Riley*, 291 Ga. 534, 536-537 (II) (731 SE2d 740) (2012) (citations and punctuation omitted).

[14] *Robinson v. State*, 277 Ga. 75-76 (586 SE2d 313) (2003).

[15] *Dyer v. State*, 295 Ga. App. 495, 498 (1) (672 SE2d 462) (2009) (citations and punctuation omitted).

Failure to satisfy either prong of the *Strickland v. Washington* standard is fatal to an ineffective assistance claim.[16] "We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[17]   In order to evaluate Mathis's ineffectiveness claims, we must examine the evidence presented at trial and at the hearing on the motion for new trial.[18]

(a) Mathis challenges trial counsel's failure to object to the testimony of B. M., because the state gave the defense written notice of its intent to call him as a witness only four days before trial, when OCGA § 17-16-8 (a) requires notice not later than ten days prior to trial.

> Although the statute requires the prosecuting attorney to furnish to the defense not later than ten days prior to trial, the names and other identifying information of the State's trial witnesses, the court may "for good cause" allow an exception to that requirement "in which event the

---

[16] *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995) (citations and punctuation omitted).

[17] *Robinson*, supra at 76 (citation and punctuation omitted).

[18] *Leopold v. State*, 324 Ga. App. 550, 551 (751 SE2d 184) (2013).

defense shall be afforded an opportunity to interview such witnesses prior to the witnesses being called to testify."[19]

Trial counsel testified at the hearing on the motion for new trial that he had known, possibly weeks before trial, the substance of B. M.'s expected testimony, from conversations trial counsel had with the state's attorney;[20] that trial counsel had not interviewed B. M. before trial; that he was surprised at the detail of B. M.'s trial testimony, though he did not think that interviewing B. M. would have made much, if any, difference; and that hearing the testimony for the first time at trial did not make his cross-examination of B. M. any less effective. Indeed, trial counsel thoroughly cross-examined B. M. at trial, eliciting testimony about his criminal history (which included forgery charges) and psychiatric issues. And on cross-examination, B. M. admitted that he hoped that testifying for the state in Mathis's case would help him in the criminal cases pending against him. Under the

---

[19] *Puga-Cerantes v. State*, 281 Ga. 78, 80 (3) (635 SE2d 118) (2006) (citation and punctuation omitted).

[20] Regarding the reason for the delay in notice, at the hearing on the motion for new trial, in his examination of trial counsel, the state's attorney suggested that B. M.'s identity had not been disclosed to the defense earlier because the state wanted to avoid endangering the witness. The record shows that B. M. was moved out of the Putnam County jail four days before trial.

circumstances, Mathis has not shown a reasonable probability that the outcome of the trial would have been different had the state provided the witness's name any sooner than it did.[21]

(b) Mathis contends that trial counsel failed to investigate Mathis's claim that he and B. M. were either not detained in the same facility or would not have had access to each other at the time of Mathis's alleged confession to B. M. At the hearing on the motion for new trial, a jail administrator testified that Mathis and B. M. were in the same dormitory or cell block from October 30, 2010 through November 20, 2010. The administrator "[couldn't] say they didn't have contact [in December], but they were not in the same dormitory." Thus, Mathis did not show that further investigation by counsel would have revealed testimony that would have been favorable to him, and that the failure to so investigate affected the outcome of the trial.[22]

(c) Mathis contends that trial counsel failed to investigate and present Mathis's alibi witnesses at trial. Mathis asserts that two individuals were willing to testify that

---

[21] See *Mann v. State*, 276 Ga. App. 720, 723 (624 SE2d 208) (2005); see generally *Puga-Cerantes*, supra at 80 (3).

[22] See *Grant v. State*, 295 Ga. 126, 132 (5) (c) (__ SE2d __) (2014).

he was elsewhere on the night in question, but that trial counsel either did not speak with them or failed to investigate their information after he spoke with them.

At the hearing on the motion for new trial, trial counsel testified that the purported alibi witnesses were members of Mathis's family, that he had spoken with "[a]ll the people that [Mathis] identified might be helpful." Trial counsel explained that he did not call them as witnesses because he believed that their testimony was not valuable (regarding the time of evening) or was not credible.

"The defense of alibi involves the impossibility of the accused's presence at the scene of the offense at the time of its commission. The range of the evidence in respect to time and place must be such as reasonably to exclude the possibility of presence."[23] The expected testimony did not make Mathis's presence at the scene impossible, or reasonably exclude the possibility of his presence.[24] Mathis's fiance's expected testimony was that he was "at home . . . the whole entire day with me, the kids, and the neighbor's kids, because I had to work that day from 6:00 to 2:00"; Mathis's sister's expected testimony was that Mathis was "at home" that night, at

---

[23] OCGA § 16-3-40.

[24] S. C. testified that Mackey arrived at his house between 11:30 p. m. and 12:00 midnight.

11

"[a]bout 11:00, 11:30"; notably, neither witness's expected testimony included any information about the distance between "home" and the crime scene.

Trial counsel testified that he had made a strategic decision not to call the two alibi witnesses, based on how the trial was progressing and considering the alibi witnesses' credibility and the quality of their expected testimony. "Judicial scrutiny must be 'highly deferential' to the strong presumption that counsel's conduct might be considered sound trial strategy."[25] Trial counsel's decision not to call these witnesses was strategic, and that strategy was reasonable under the circumstances.[26]

Further, even if trial counsel's performance was deficient because he failed to call these two individuals as alibi witnesses, Mathis did not show any resulting prejudice. The expected testimony would not have rebutted the overwhelming evidence connecting Mathis to the crimes, including Mackey's and B. M.'s testimony that Mathis committed the crimes. "In assessing the prejudicial effect of counsel's failure to call a witness (whether that failure resulted from a tactical decision, negligent oversight, or otherwise), a petitioner is required to make an affirmative

---

[25] *Hargrove v. State*, 291 Ga. 879, 881 (2) (734 SE2d 34) (2012) (citation and punctuation omitted).

[26] See id; *Lewis v. State*, 294 Ga. 526, 529-530 (755 SE2d 156) (2014); *Green v. State*, 291 Ga. 287, 297-298 (10) (d) (728 SE2d 668) (2012).

showing that specifically demonstrates how counsel's failure would have affected the outcome of his case."[27] There is no reasonable probability that the outcome of the trial would have been different had the expected testimony been presented.[28]

(d) Mathis contends that trial counsel "failed to utilize clear impeachment evidence," namely, S. C.'s testimony from a probation revocation hearing purportedly showing that S. C. had failed to identify Mathis in a photographic array. But at trial, when asked about the photographic array presented to him soon after the crimes occurred and whether he had been certain about the identity of the person who had hit him, S. C. testified that he had "recognized that face, more or less," and had answered that he "cannot say" he was certain as to the person's identity; S. C. explained that he had gotten only one "look" at the assailants during the incident, and that he had been "passing by really fast [when he fled] and . . . couldn't remember." S. C. was thoroughly cross-examined regarding the identifications. Mathis has failed to show prejudice from the failure to use the cited evidence at trial.[29]

---

[27] *Goodwin*, supra.

[28] See *Lewis*, supra; *Hall v. State*, 292 Ga. 701, 704-705 (4) (f) (743 SE2d 6) (2013); *Green*, supra.

[29] See *Hall*, supra at 705 (4) (g); *Hargrove*, supra at 882-883 (2) (b, c).

13

(e) Mathis complains that trial counsel was ineffective in that he failed to move for a directed verdict as to the armed robbery charge even though there was no competent evidence of an armed robbery. He contends that the evidence did not show that the battery charger was used before S. C.'s property was taken (i.e., to accomplish the theft).[30]

Mathis was not entitled to a directed verdict on the armed robbery charge because the evidence, viewed in the light most favorable to the jury's verdict,[31] as set out in Division 1,[32] was sufficient to enable the jury to find that the perpetrators used offensive weapons either before or contemporaneous with the taking of S. C's property, and that Mathis was guilty beyond a reasonable doubt of armed robbery.[33] Therefore, trial counsel was not ineffective for failing to move for a directed verdict on the armed robbery charge.[34]

---

[30] See *Tookes*, supra.

[31] See id.

[32] Supra.

[33] See *Tookes*, supra.

[34] See *Jimmerson v. State*, 289 Ga. 364, 369 (2) (d) (711 SE2d 660) (2011); *Nelson*, supra; see generally *Tookes*, supra; *Dulcio v. State*, 292 Ga. 645, 655 (3) (j) (740 SE2d 574) (2013).

14

(f) Mathis complains of trial counsel's failure: (i) to move to suppress the photographic array, and (ii) to object to improper comments by the state's attorney during closing argument.

(i) Mathis contends that trial counsel "had notice of a potential problem" with the photographic array, but failed to investigate and move to suppress the evidence. But he makes no argument or showing as to why the array should have been suppressed. "As [Mathis] has failed to make a strong showing that such an objection or motion would have been successful, he has not shown prejudice."[35]

(ii) Mathis asserts that trial counsel should have objected to the prosecutor's comment during closing argument that he was surprised by S. C.'s testimony that he did not remember looking at a photographic array to identify Mathis.[36] According to Mathis, the comment "sent a strong message to the jury that there was a clear prior identification of Mr. Mathis by the victim," when the evidence did not support such a message.

---

[35] See *Hargrove*, supra at 882 (2) (b); see generally *Morris v. State*, 322 Ga. App. 682, 686 (4) (a) (746 SE2d 162) (2013).

[36] The state's attorney followed that remark with: "I can't explain that to you. But I can explain this to you. This is a guy who was terrified and trying to be very careful."

First, we do not agree with Mathis that the comment indicated that S. C. had made a clear prior identification. Second, the trial court instructed the jury to return a verdict based on the evidence, and instructed that closing arguments by the attorneys were not evidence. Thus, "we do not think the jury was impressed either way by [the prosecutor's comment], and we find any error harmless."[37]

(g) Considering the combined effect of any assumed deficiencies set out above, and in light of the overwhelming evidence of Mathis's guilt, there is no reasonable probability that, but for such assumed errors, the result of the trial would have been different.[38] Accordingly, Mathis has not shown ineffective assistance of trial counsel.[39]

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. Ellington, P. J., and McMillian, J., concur.*

---

[37] *Stubbs v. State*, 315 Ga. App. 482, 485 (4) (727 SE2d 229) (2012).

[38] See *Humphrey*, supra at 536-537, 545 (II) (K).

[39] Id.