# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs May 1, 2012

## BRITTANY SCOTT PYE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Maury County**
**No. 17640     Stella Hargrove, Judge**

---

**No. M2011-01633-CCA-R3-PC - Filed December 28, 2012**

---

The Petitioner, Brittany Scott Pye, appeals from the Maury County Circuit Court's denial of post-conviction relief.  He was convicted of sale of .5 grams or more of cocaine and sentenced as a multiple offender to fifteen years in the Department of Correction.  In this appeal, the Petitioner contends that he received ineffective assistance of counsel based on trial counsel's failure to communicate his acceptance of the State's offer of settlement prior to trial.  He also contends that the trial court abused its discretion in refusing to accept his guilty plea  after a trial date had been scheduled.[1]  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. D. KELLY THOMAS, JR., J., filed a concurring in part and dissenting in part opinion.

Robert C. Richardson, Jr., Columbia, Tennessee, for the Petitioner, Brittany Scott Pye.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; T. Michael (Mike) Bottoms,  District Attorney General, for the Appellee, State of Tennessee.

## OPINION

---

[1]The Petitioner apparently raises other issues pertaining to the preparedness of counsel and jury selection.  However, these issues are waived because they were not addressed in his appellate brief to this court.  See Tenn. R. App. R. 27 (a)(7), (b); Tenn. R. Crim. App. 10(b).

The Petitioner was convicted by a jury of sale of .5 grams or more of cocaine, a Class B felony, and sentenced as a Range II, multiple offender to fifteen years.[2] The Petitioner filed a direct appeal challenging only the imposition of consecutive sentences, which was affirmed by this Court. State v. Brittany Scott Pye, No. M2009-00825, 2010 WL 1874369 (Tenn. Crim. App. May 11, 2010) no perm. app. filed. In our direct appeal, we summarized the facts of the case as follows:

This case stems from the October 20, 2006 sale of a bag of crack cocaine to a confidential informant. The confidential informant telephoned the [Petitioner] to meet her at a car wash. After the [Petitioner's] arrival, the confidential informant got into a car with the [Petitioner] and Brandon Russell. The informant put her money on the console of the car and "picked up the dope." The informant returned to the officer with a quantity of crack cocaine weighing .8 grams. The sale was observed by an undercover police officer and was recorded by video camera.

Pye, 2010 WL 1874369 at *1.

The Petitioner timely filed a pro se petition for post-conviction relief in the Maury County Circuit Court and was appointed counsel. Appointed counsel filed a notice stating that he and the Petitioner had reviewed the petition and agreed there was no need to amend the pro se petition. After a hearing, the circuit court issued an order denying post-conviction relief. This appeal followed.

**Post-Conviction Hearing.** At the hearing on his petition for post-conviction relief, the Petitioner said he hired counsel to represent him before the case was waived to the grand jury. Counsel represented him through the trial, sentencing, and on direct appeal. The Petitioner had a good working relationship and good communication with counsel. He said he spoke with counsel via telephone "[m]aybe two or three times a week," and that counsel notified him of court dates through the mail. Counsel informed him that he had been charged with sale of .5 grams or more of cocaine, explained to him the nature of a trial and the proof required by the State, and kept him apprised of the proceedings. Counsel showed him the State's video recording of the drug transaction, and the Petitioner saw his face on the film.

During counsel's representation, a confidential informant testified against the Petitioner, resulting in revocation of the Petitioner's probation on unrelated charges. The Petitioner said for "three to four months" prior to trial, the confidential informant did not

---

[2]Apparently, this sentence was ordered to be served consecutively to other unrelated sentences.

appear at his hearings on the instant offense, and the Petitioner and counsel discussed the possibility of the informant not appearing at trial.

The Petitioner testified that counsel first presented the State's settlement offer to him "in December of '08," a month before his trial. The State offered him "twelve years to run concurrent with [his] other case." He testified that he rejected the offer because "at that time . . . they still couldn't find [the confidential informant]," and he believed the State's film, which briefly showed part of his face, was not strong.

The Petitioner said counsel "came to see [him] . . . . [m]aybe a week before trial." The Petitioner could not recall either the exact date counsel visited him or the date of the scheduled trial. During this visit, counsel presented the State's settlement offer to him again and told him he needed a response. The Petitioner thought he was supposed to call counsel with his answer that week, and he recalled trial was "maybe the following week." The Petitioner testified that he thought he called counsel "after 4:30 p.m." the same day counsel had visited and that he told trial counsel he wanted to accept the settlement offer. The Petitioner said that counsel told him that the courthouse was closed and that he would contact the prosecutor and the trial judge to inform them of the Petitioner's decision.

The following week was a holiday, and the Petitioner eventually learned that the trial judge would not accept the plea agreement. The Petitioner talked with counsel about the settlement offer again the morning of the trial, and the Petitioner was permitted to ask the trial judge to accept his guilty plea. He did not ask the trial court to continue the case or allow him to obtain another lawyer. He agreed that his main complaint about counsel was that he did not communicate his acceptance of the State's settlement offer prior to trial.

On cross-examination, the Petitioner acknowledged that the State offered to settle the case in December of 2008. However, he had seen the State's video and believed that there was not enough proof to support a conviction. He said he rejected the State's settlement offer because he thought that the confidential informant might not appear to testify against him, and even if she did, he did not believe the evidence was sufficient to convict him.

Counsel testified that he advised the Petitioner to accept the State's settlement offer on December 15, 2008. Counsel "explained to [the Petitioner], it boils down to whether or not the jury believes the [confidential informant]. If they believe her, they're going to convict you. If they don't believe her, then they won't convict you." On cross-examination, counsel said he told the Petitioner the case needed to be settled prior to being set for trial, but the Petitioner rejected the offer.

Counsel further testified that on Wednesday, January 14, 2009, prior to the January 21 trial, he visited the Petitioner in prison and discussed the settlement offer again. During

the visit, counsel told the Petitioner multiple times that he needed to know the Petitioner's decision regarding the settlement offer that day in order to notify the prosecutor and the judge. Counsel specifically told the Petitioner, "I need to know something today; I need to know something today. Let me know something today." Counsel said the Petitioner would not commit, and trial counsel "c[ould]n't make him do something he didn't want at that time."

Counsel stated that he called the court on "Wednesday and said 'Is there a chance [the court would accept a plea]?'" However, counsel testified that he did not "get [the Petitioner's] phone call back [accepting the offer] until Thursday night." Counsel called the judge on Friday, however, court was in session. Counsel said "the weekend came" and that the trial court was closed the following Monday for Martin Luther King, Jr., holiday. On Tuesday morning, counsel called the trial court again and was informed that the court refused to accept the Petitioner's guilty plea. Counsel outlined his court schedule from Thursday to Monday as follows:

> Most Thursdays, you're in Sessions Court upstairs, or you're in Sessions in Giles County. Friday is a civil day, Chancery day in Maury County where you've got divorce cases on the docket. You knew Thursday was going to be taken. You knew Friday was going to be taken. Monday was Martin Luther King holiday.

On cross-examination, counsel acknowledged he had "an extensive criminal practice" and estimated that approximately eighty percent of his cases settled. Counsel was aware that the judge was "real strict about time constraints." There was no formal scheduling order by the court setting a date to conclude plea negotiations; however, counsel stated, "if a case got set for trial, there's a decent chance they won't accept a plea agreement."

By written order, the post-conviction court denied relief and determined that the Petitioner had failed to carry his burden for post-conviction relief.

## ANALYSIS

On appeal, the Petitioner contends that he received ineffective assistance of counsel based on counsel's failure to timely secure approval of the State's settlement offer and that "the trial court's refusal to accept the [Petitioner's] plea was abuse of discretion." The State responds that the post-conviction court properly denied the petition because the Petitioner failed to prove ineffective assistance of counsel. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted). This "constitutional right to counsel extends to the negotiation and consideration of plea offers that lapse or are rejected." Missouri v. Frye, 132 S. Ct. 1399, 1404, 1407-08 (2012). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Id. at 1408 (concluding defense counsel rendered ineffective assistance by failing to communicate to defendant a formal plea offer which had a "fixed expiration date" and therefore lapsed).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance

prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

In the context of a lapsed or rejected plea offer:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law.

Frye, 132 S. Ct. at 1410-11 (remanding for state court to determine whether prejudice had occurred).

"In evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689, 104 S. Ct. 2065). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065.

Over a month prior to the Petitioner's trial, counsel communicated the State's twelve-year offer to settle the Petitioner's case to him. Counsel advised the Petitioner to accept the settlement offer on December 15, 2008, and the Petitioner rejected it. Counsel obtained permission from the prosecutor to extend the original twelve-year offer to the Petitioner a week prior to trial. The Petitioner acknowledged that counsel visited him in prison on Wednesday, January 14, 2009, seven days prior to his January 21, 2009 trial. Counsel communicated the offer to the Petitioner and told him that he needed to notify the prosecutor and the judge of his response that day. Although the Petitioner testified that he called counsel and accepted the offer on that same day, he acknowledged that at that point, the courthouse had closed. The Petitioner further acknowledged in his handwritten petition for post-conviction relief that he "[knew] the judge [did not] have to except (sic) a plea." In its written order denying relief, the post-conviction court stated:

> Petitioner had the privilege of being represented by a very good defense attorney, one who is skilled in the law and one who goes to great lengths to protect the rights of his clients. . . .
>
> The Court finds that it is Petitioner's fault that he did not timely accept the plea bargain offered by the State as early as December, 2008. He gambled that the informant would not show up for trial and lost.
>
> . . . .
>
> The Court finds that Petitioner has failed to carry his burden of proof as to ineffective assistance of counsel, and denies the Petitioner for Post-Conviction Relief.

The evidence does not preponderate against the determination of the post-conviction court. There is no question that counsel acted reasonably in conveying the State's offer of twelve years to the Petitioner in December. In essence, the Petitioner claims that counsel was ineffective because counsel did not communicate the Petitioner's acceptance of the January offer to the parties quickly enough. The record shows, however, that the Petitioner had insisted on a trial throughout the proceedings. The Petitioner's case had been scheduled for trial as early as June 2008, and was continued twice due to the court's docket or the absence of the informant. In addition, at the time of the State's twelve-year offer in December 2008, the Petitioner was aware of the trial court's general policy of not accepting plea agreements after a case was "set" for trial. Armed with this knowledge and against the advice of counsel, the Petitioner chose to reject the State's December offer and proceed with trial. By rejecting the settlement offer at this stage, the Petitioner further reduced the probability that the trial court would accept a plea agreement. Accordingly, regardless of when the Petitioner's

acceptance of the January offer was communicated to the State and the court, it was unlikely to be accepted by the court.

Moreover, in our view, counsel simply renewed his efforts to obtain a negotiated plea on behalf of the Petitioner. While counsel initiated these efforts only a week before trial, this was after the Petitioner had repeatedly expressed his willingness to proceed to trial and after rejecting the State's offer a month earlier. On the day counsel communicated the renewed offer to the Petitioner, the Petitioner knew that time was of the essence yet failed to definitively commit. Significantly, the Petitioner's failure to commit was communicated to the prosecutor and served as a rejection of their offer. There is no proof that the prosecutor would have adhered to the offer after being notified of its rejection. To view counsel's action as anything other than reasonable would discourage the zealous pursuit of plea negotiations in criminal cases. It would also erect an unreasonable time frame within which defense counsel must relay his or her client's acceptance of an offer to the State and the court, or risk engaging in deficient performance. We decline to restrict the scope of plea negotiations in such a manner.

Under these circumstances, the Petitioner has failed to show that counsel's performance was deficient or any resulting prejudice. See e.g. Burch v. State, 289 Ga. App. 388, 657 S.E.2d 294 (Ga. Ct. App. 2008) (rejecting claim of ineffective assistance of counsel wherein trial counsel told defendant that he needed a response to the State's negotiated plea offer "right then" and period for acceptance of plea agreement had lapsed requiring the defendant to enter "non[-]negotiated" plea) and Whited v. State, 258 Ga. App. 195, 197, 573 S.E.2d 449 (Ga. 2002) (holding that counsel cannot be deemed ineffective for failing to detail consequences of rejecting state's plea offer when defendant told counsel he would not plead guilty), overruled in part on other grounds, Schofield v. Holsey, 281 Ga. 809, 811, n. 1, 642 S.E.2d 56 (Ga. 2007). He has also failed to show that, but for counsel's untimely communication of his acceptance, there was a reasonable probability that the prosecutor would have adhered to the agreement or that it would have been accepted by the trial court. Accordingly, the Petitioner is not entitled to relief.

The Petitioner also claims that the trial court abused its discretion by not accepting his plea agreement on the day of trial. In Tennessee, the decision to accept or reject a plea agreement rests within the sound discretion of the trial court. See, e.g., State v. Hines, 919 S.W.2d 573, 576 (Tenn. 1995) (citing Tenn. R. Crim. P. 11(e)(2)); State v. Todd, 654 S.W.2d 379, 382 (Tenn. 1983) (citing Santobello v. New York, 404 U.S. 257, 262 (1971)); Goosby v. State, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995). "'Generally, an abuse of discretionary authority occurs only when the trial court applies an incorrect legal standard or reaches a decision which is against logic and reason.'" State v. Odom, 336 S.W.3d 541, 559-60 (Tenn. 2011) (quoting Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010)); see Goosby, 917 S.W.2d at 705 ("To find that a trial court has abused its authority, it must appear that no

substantial evidence supports the conclusion of the trial judge."). Rule 11 permits the trial court "to impose reasonable pretrial time limits on the court's consideration of plea agreements, a practice which will allow maximum efficiency in the docketing of cases proceeding to trial on pleas of not guilty." Tenn. R. Crim. P. 11(c)(2), Advisory Comm'n Comments. Although the phrase "reasonable time limits" has not been defined by our courts, a trial court does not abuse its discretion by setting a deadline for entering into a negotiated plea. See State v. Randell Murphy, No. W2011–00744–CCA–R3CD, 2012 WL 1656735, * 3 (Tenn. Crim. App., May 9, 2012) perm. app. denied (Tenn. Sept. 19, 2012) (concluding that the trial court did not abuse its discretion upon rejecting plea agreement on the "eve of trial" and after plea deadline).

This issue is waived on multiple grounds. The Petitioner contends that the trial court failed to comply with the requirements of Rule 11(c)(5) in rejecting his plea agreement.[3] Unfortunately, while the Petitioner alludes to a hearing regarding this issue in his brief, there is no transcript of what occurred between the trial court and the Petitioner regarding his plea agreement in the record on appeal. The Petitioner's brief is of no assistance because it provides only a general citation to all three volumes of the trial transcript in support of this issue. Our review is further hampered because the record demonstrates that the Petitioner failed to develop this issue in any meaningful way before the post-conviction court. Finally, this issue was not presented in the Petitioner's petition for post-conviction relief or his direct appeal, and the Petitioner has failed to provide this court with any explanation for its omission. Under Tennessee Code Annotated Section 40-30-106(g), "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." Accordingly, the Petitioner is not entitled to relief.

## CONCLUSION

---

[3]Pursuant to Rule 11(c)(5), if the court rejects the plea agreement, the court shall do the following on the record and in open court (or, for good cause, in camera):

(A) advise the defendant personally that the court is not bound by the plea agreement;

(B) inform the parties that the court rejects the plea agreement and give the defendant an opportunity to withdraw the plea; and

(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case

Tenn. R. Crim. P. 11(c)(5).

Upon our review, we affirm the judgment of the post-conviction court.


_____

CAMILLE R. McMULLEN, JUDGE